Good morning your honors. Rob Robertson representing the plaintiffs Jeremy Carroll and Marvin Johnson. The level and breadth of the police misconduct in this case warrants a trial. Instead we find ourselves here on the wrong side of a grant of summary judgment on all claims. We have here a case where the detectives hid an exculpatory eyewitness that gave both plaintiffs an alibi for the charge that they were facing. Was Mr. Moore also a suspect that evening? Your honor, I think that that's one of the most interesting things about this case absolutely. And was the alibi one that was in essence ironclad or as I when the police went to check it out right? Listen, that's correct. I'm listening. I'm sorry your honor. That's absolutely correct. That being said there were witnesses that corroborated the fact that they were legitimate repossessions. Both plaintiffs had repossession IDs on them, had repossession orders, had repossessed four cars the prior day, and they'd driven them all the way out to Matson, which is no easy task. We also have with Eric Moore, yes he was a suspect, which makes it all the more reason why he should have been presented to the state's attorney. There was a rumor that, not rumor, there was information that people were impersonating police officers and that that's what allegedly happened with respect to this robbery. Yet the only individual that had any police paraphernalia, Eric Moore, who had a duty badge, who had a mag light, and who had a bulletproof vest, oh we don't tell the state's attorney about that guy? Come on. You know it shows and you talked about the aroma in the last case, the aura. What it shows is why would any detective hide this person from the very person who's making the decision whether to charge plaintiffs or not. Was Moore's story in the police reports? Moore's story was not in the police reports. The primary, I believe, if I'm wrong I'm wrong, but I believe the primary... I thought it was very clear that it was, see if I can find them, but I thought the police reports that went to the prosecutor, maybe not the same night, but within a very short period of time. Oh I mean Moore was documented as being there. It wasn't like he was not out there. The details of Eric Moore were I don't think it contains everything that Eric Moore provided in his affidavit, but the issue is not that the police, not that the information was eventually provided to the police, to the prosecution, but that it was hidden from the felony review assistant who made the decision as to whether or not to charge. And there's no indication it was presented to the grand jury who made the decision to indict. And as a result we had one plaintiff who actually pled guilty, even though he denied his oral confession, and the state's attorney's office subsequently let him withdraw his plea 15 months later and then dismissed the case. And another one who went on, whose family mortgaged the house, who fought it for 15 months before the state's attorney's office dismissed the case. Yet in spite of all this, and in spite of the massive factual issues in this case, we don't even get an opportunity to bring their case to trial. You know, the issues in this case extend even beyond Eric Moore. You have massive issues with the identification provided by, the difference between identification provided, the description of the robbers, and of the actual suspects. In the Arias robbery, we have the description of an offender as being 5'2", and 40 years old. Mr. Cario, 6'5". Isn't there a fairly simple explanation there that's just reversing offenders 1 and 2, that accounts for a good deal of the difference in height? You know, I know that that was the justification that Detective Johnson put forth in an after the fact affidavit. That being said, Your Honor, that is an issue of fact. That's why we have an issue here. We also have, I mean, there's a real problem for police officers when eyewitnesses go south on them, right? Sure. And if there's, you know, eyewitnesses can start out shaky and convince themselves this is solid, they can go the other direction as well. Given that we're talking here about whether probable cause existed, I guess those eyewitness identifications seem like they give an awful lot of strength to the defense. In terms of witnesses going south, we have, it's not a case where there's any indication that these were anything other than solid citizens. Okay? On one hand, that gives some corroboration to the defense. But on the other hand, we have information in the record that Misetich, the individual from the robbery the previous night, was unsure at the scene of his identification of both Carriel and Johnson. That's an issue of fact. There's no clear cut identification. Is it undisputed that he later was certain? Your Honor, it's undisputed that the defendants claim he was certain. And that's where we get into the... Do you have any contrary evidence about his certainty on the... You've gotten more talking about the show up that night, right? But do you have any evidence to contradict the defense assertion that he believes they're guilty? Your Honor, I have no direct evidence. I have circumstantial evidence in the form of the Eric Moore, which you mentioned. Circumstantially, how do you go from an ID that's uncertain to an ID that's positive? There's also the other evidence of misconduct in this case in terms of fabricating an oral confession, the interrogation techniques used on the records and not presenting it to the state's attorney. All those give an aura to the identification in this case. We also have, with respect to... Specifically with respect to Mr. Misetek, we have an individual whose accounts... And granted, this is one night after the robbery, one night after it, whose accounts don't match with the confession from Mr. Carriel. They have different cars involved, different number of offenders involved. Whether a gun was involved or not, this is one day later and the confession doesn't match what this eyewitness is saying. On top of it, with respect to Mr. Misetek, he describes Mr. Carriel by the wrong race. Now, when he describes him by the wrong race, he said it was a male Hispanic. A male Hispanic that Mr. Misetek said he chased into a house on South Ridgeway. A man was arrested that night, surprise, surprise. A male Hispanic who fit the description, yet that individual was never shown to Mr. Misetek, even though he was still in the area. So, although there may be no direct evidence contradicting Mr. Misetek in a city of six million people that he was, that he thinks he was right, there's a load of circumstantial evidence that shows there's a question of fact and we should be able to present that to a jury. The question of fact as to whether the police maliciously prosecuted him and violated his due process rights by doing all those things I listed in terms of fabricating the confession, their interrogation techniques, the hiding the alibi witness and corroborating records, and then also, we think an inference that with both of these IDs being so out of whack, wrong race, different encyclopedias, we should be able to present that to a bell curve on the height that all of those factors add to a question of fact as to whether the plaintiffs should be allowed to recover. Yet, at every opportunity, the trial, the district court denied us the question of fact and went beyond its role as just simply an arbiter of whether or not a question of fact existed and actually went further, resolving disputed factual inferences against us instead of giving us the benefit of the doubt. Mr. Robertson, can I ask you a question about, it seems like there may well be a genuine factual issue about whether plaintiff Johnson actually confessed to the robberies. The defense has argued that there was no indication that his quote confession was also would be a question of fact. In terms of his confession not being used, we have a situation where one, he was charged by the assistant state's attorney with a class one felony. Two... Was it on the basis of his confession? Well, it's on the basis of the evidence that was presented to the state's attorney. And we know that the state's attorney was told that Johnson made an oral confession to the detectives. We know that the state's attorney was not told about the Eric Moore who gave Johnson the alibi. We know that the state's attorney was not told about the business records that gave corroboration to that. So the ASA testified in her deposition that she was told of the Johnson confession before making the charging decision. I don't want to say for 100%, but either she testified that or Detective Alder didn't testify to that. I don't think that that fact is in dispute. I would find it highly unlikely that somehow that escaped the state's attorney. Just like highly unlikely that the individual who was named by Mr. Cariol in his confessions as the mastermind, the indicated by Mr. Johnson as the actual person who committed these crimes, was never presented to the state's attorney. And that being Eric Moore. So in in light of in light of all these factors, all we asked from the trial court was the opportunity to present these claims to a jury. And in each case, the district court kind of massaged the record, went from one aspect to another, and denied us that right. Thank you very much. I'll save the rest of my time for rebuttal. Okay, thank you Mr. Robertson. Good morning, your honors. May it please the court. The plaintiffs in this case claim that they were prosecuted on criminal charges that were unfounded, with their allegations focused on the role of Detective Alderden, who was the lead detective investigating the case after plaintiff's arrest. The allegations of intentional police misconduct are not supported by the record, but more fundamentally, the law is clear that the Constitution does not set a standard governing the initiation of criminal charges. Apparently recognizing this, plaintiffs have made an effort to cast their allegations in terms that might end up might fit into recognized causes of action under the Due Process Clause. For instance, plaintiffs portray their allegation that the defendants didn't tell the assistant state's attorney about Eric Moore as as a Brady claim, and they try to frame the allegations about Plaintiff Carrell's confession as a claim of fabricated evidence. But no precedent of this court recognizes a cause of action under circumstances like this. As for the so-called, you know, the notion of suppressed exculpatory evidence, to take this back to what what plaintiffs are complaining about, they claim that Detective Alderden, you deliberately hid the existence, or the fact that Eric Moore was in custody and had, he said he had an alibi for the plaintiffs. This ignores that the plaintiffs knew everything that the detectives knew about what what Eric Moore could provide. They, of course, if they were someplace else the night before, they knew where they were, they knew they were with Moore, and they knew Moore was in custody. And it's well established that evidence can't be considered suppressed for Brady purposes when it is it's available to the plaintiff with the exercise of reasonable diligence. And here, you know, plaintiffs didn't even have to do anything. They knew everything about Moore. You know, this information was entirely within their knowledge. I think what plaintiffs claim, what plaintiffs miss is that the officer police officers obligations under Brady run to the criminal defendant, not to the prosecutor. Police don't, there's not an obligation under Brady to tell a prosecutor about matters within a criminal defense, within a suspect's knowledge. And the notion that Eric Moore's, what he had to say about where the plaintiffs were, was so powerful. I mean, if that was so powerful that it would eliminate the basis for the criminal charges, the courts could have brought that to the state's attorney's office right away. You make an argument that strikes me as strange. This has to do with the malicious prosecution. You say that if probable cause attaches at any point, the fact that later it dissolves because of additional information, that the police or the investigators, the prosecutors can continue the prosecution once they had a probable cause, even if they learn, you know, the next hour that there is no, there is no basis for prosecuting. I know, I'm sorry. Is that your position? No, that is not our position. So I'm sorry if anything we said in our brief was, you know, I mean, you know, there's not a Fourth Amendment claim in this case. In a Fourth Amendment. That's correct, that's right. I'm talking about malicious prosecution. That's correct, and that's not our argument. I mean, we don't argue that once probable cause is established, you know, that the police can ignore, that the charges are acceptable. I mean, under state law, under malicious prosecution. Oh, didn't they do that here? Show that there was evidence that made probable cause dissipate? There's not, I mean, the evidence doesn't support the idea that the probable cause... You say probable cause existed as a matter of law, whatever that means. Even a single eyewitness identification provides probable cause. Well, what if the next day the single eyewitness says, oh, I was just making it all up? You're saying that because there was a moment of probable cause before he recanted, the malicious prosecution claims failed? No, no, your honor, that was not our argument at all. It's that the identification here provides probable cause, and there isn't other evidence that's so powerful that it negates probable cause. And there is no evidence dispute, you know, there is no no dispute of fact that Mr. Misicich made a confident, unequivocal identification of the plaintiffs. And he didn't recant it. What plaintiffs rely on to, you know, try to dispute that identification is discrepancies which are way overblown between what he originally described to police after the robbery, you know, and what the plaintiffs looked like. And Moore's statement, or you know, Moore's affidavits... Well, you say there's no Brady right in federal law if there's no actual trial. But what about for purposes of malicious prosecution? That is, wouldn't concealment of exculpatory information be an element in the malicious prosecution suit? It would, if despite, if there was exculpatory evidence that did not, you know, actually negate probable cause, there would still be probable cause, which would be a defense to a state law malicious prosecution claim. But here the evidence doesn't even support the allegation that any exculpatory evidence was suppressed. Because the things that the plaintiffs focus on as being suppressed is mainly the fact that Eric Moore was in custody and that he said he was with the plaintiffs. Now, that's evidence that the plaintiffs knew about. Now, we can see that there's an issue of fact that Detective Alderton didn't tell the assistant state's attorneys, the assistant state's attorney, about Moore. She, the assistant state's attorney said she didn't remember. This is serious. Well, I was going to say we... On the malicious prosecution count. I would say it's, I mean, we don't have an explanation for that because Detective Alderton doesn't concede that he failed to do that. He wasn't asked about it. His deposition... Why isn't that a tribal issue? Because if he, I mean, there is an issue of fact whether he told the assistant state's attorney about it. But the evidence that was supposedly suppressed wasn't exculpatory. If there's an issue of fact, don't you need a trial? It has to be a material issue of fact. A what issue? Serious? I didn't get the adjective. I'm sorry, it has to be a material issue of fact. And the fact that Eric Moore was in custody and said that he was with plaintiffs the night before when But what, I mean, Detective Alderton actually, it's not that the detectives were ignoring this information. It was when after interviewing Moore, when he said we were repossessing cars, we work for this agency in Aurora, Detective Alderton sent other detectives out there to investigate and get records because Eric Moore had said that they would corroborate this alibi. In fact, all the records showed was that Eric Moore was repossessing cars the day before. There were no records about either of the plaintiffs. It appears they weren't actually employees of the agency. They were being paid cash. They were being paid cash to help Moore out. So there were no records at all. So it was Eric Moore's say-so that the plaintiffs were with him the night before. The robbery the night before, Mr. Misitech, he saw Eric Moore and didn't identify him as one of the people who was involved. And so, you know, basically it was Eric Moore's say-so. What ultimately, you know, led, the powerful thing that led to these charges being dropped, what didn't have anything to do with Eric Moore, it was Kyrell's phone records, which his attorney found, you know, that showed that he was someplace far away enough that it was unlikely that he committed either of these robberies. Well, it was Alderton who dug into that, right? I'm sorry? It was Detective Alderton who dug into that. It wasn't the phone records, actually, that Detective Alderton dug into, but I think this goes to the- He went into the, he noticed the discrepancies between repossession records and the confession, right? Yeah, he did, because there were documents that were brought back, and when he was interviewing, they weren't exculpatory documents, because they didn't actually have anything to do with the plaintiffs, but because he had talked to Kyrell, and Kyrell had rattled off a bunch of names of people that he, you know, had supposedly robbed, and looking closely at them, some of those names were listed among the repossession orders. He brought that to the state's attorney's attention. He also, when there was another police impersonation robbery that was committed, you know, he interviewed the person who was arrested for that and went, you know, to the trouble of bringing in the, I think it was Arias, because the descriptions were very similar, and brought that to the state's attorney's office and said, I think you might have the wrong eyes. Ms. Hornstra, let me ask you, if I could, about the Johnson confession. Sure. Do you agree that there is a genuine issue of fact about whether Johnson orally confessed to the robberies? Yes. I mean, we, he, the plaintiff's version, he did not, and we take that version. And why, what, why is that not sufficient to defeat summary judgment on at least some theory that the police manufactured that? Well, there was no, I mean, we certainly don't rely on the fact of a confession from Johnson, you know, in seeking summary judgment, but there's no, as far as the theory of, I guess it's malicious prosecution, that there's no evidence that any Johnson confession was any, that it played any role in the decision. Was the prosecutor told of it? You know, the evidence on that, I do know in defendant Johnson's, sorry, plaintiff Johnson's deposition, he said when he was interviewed by the state's attorney and Detective Ulderden, together, Detective Ulderden was saying things like, oh, come on, you said you did it before. So, you know, I think that suffices to create an issue that the prosecutor knew that he had said something to police earlier. Okay. If so, why then is Johnson, at least, not entitled to a trial on a malicious prosecution theory that a manufactured confession was used to charge him? This would be the malicious prosecution claim under state law. We'll start with that. Okay. Because the existence of probable cause, you know, defeats any claim of malicious prosecution. Even if the police are manufacturing evidence? If there's probable cause independent of the manufactured evidence. No, that's what's difficult to buy. But, I mean, that's state law. And they decorate it with manufactured evidence? And that's okay? That's harmless? Well, I mean, there's no indication that the additional, the fact that Johnson, you know, the fact that the police officer said that Johnson had orally confessed earlier, but didn't make a confession to the state's attorney, denied everything to the state's attorney. There's no evidence that what the police, what the detective, you know, conveyed to the prosecutor about an earlier oral confession played any role in the decision to prosecute. And the very strong independent probable cause under state law would defeat a claim of malicious prosecution. And beyond that, there's, you know, the malice element, evidence for that is lacking as well. With manufactured evidence, you can't infer malice? Is that your position? That's not a permissible inference? There's certainly, I mean, there's certainly loads of, you know, other evidence that weighs against that inference. But even if that's so, I would say that, you know, the existence of probable cause is independent. What you're saying, sensible police behavior is find some probable cause, then enrich it with manufactured evidence. Because after all, just having probable cause is not necessarily enough, you know. Your superiors, the state's attorney, what have you, they may say, you know, in a lot of cases, yeah, you have probable cause, not such, we're not going to bother with this one. But if you push on the state's attorney all this additional manufactured evidence, then the state's attorney will act. Well, no, Your Honor. And you think that's okay? No. Well, what if there wouldn't have been a prosecution if it hadn't been for the manufactured evidence? Well, if I can go back to your question. You can't just say that whenever there's probable cause, there's going to be a prosecution. No, I mean, your question was about sensible police practices. And this Court has remarked many times that there is a gulf, often a wide one, between sensible, you know. That what? A gulf between, I mean, sensible police practices are not the same thing as what is required under the Constitution. And we really haven't discussed the federal claim here. We're not talking about the Constitution. We're talking about a malicious prosecution towards an understate law. Right. But, you know, even there, I mean, you don't make out a claim for malicious prosecution under state law by showing that, you know, the police practices should have been better. I'm not talking about should have been better. I'm talking about should have been legal. You're saying, well, if you have probable cause, okay, you can throw in some perjury. Eh, perjury, no big deal. I mean, there's a disputed issue of fact. I mean, the officer is firm that Johnson did at one point admit to this to him. Now, Johnson disputes that. I'm just talking about what your position is, which is that if there's probable cause, which is very low standard, you know, it's not a preponderance or anything, then the investigators can add in perjury and whatever they want, which will increase the probability of a prosecution. That's fine, because all you need is probable cause. No, I'm not saying. That's your position. No, no, it's not. Yes, it is your position. It is not my position. We're not saying that, you know, perjury or anything they want. What you have in this case is, you know, some hint during the interview with Johnson from Detective Alderton. On summary judgment, we have to assume there was a manufactured confession told and that the prosecutor was told about that, right? We have to assume that Detective Alderton told the prosecutor he confessed earlier when, you know, I was interviewing him. So the prosecutor would know that if she wants to go forward with charges, a police officer would be prepared to testify in court that the defendant confessed, right? Right, but she also knows that when she's talking to the suspect that he denies everything. And she believes suspects, right? Of course not. If I could, Ms. Horst, let me just, I know your time has run out, but there are a couple of things that still trouble me. One, these particular plaintiffs were released on bond, correct? Correct. Very quickly. I have to say, this case might look very different to me if they'd been held in pretrial custody. Do you agree? I think this court's precedence on that issue, whether there is, you know, a constitutional claim, you know, for being wrongly held in pretrial detention, I mean, there's tension between different lines of cases. There is. And it depends on the sort of action that is the basis for, you know, I mean, fabricated evidence used to obtain a conviction can support a cause of action. This court's recent decision in Armstrong, you know, says the pretrial detention. Prolonged imprisonment. Right, where there was the destruction of exculpatory evidence. You know, those are all issues, I mean, and the circuits are kind of all over the map on this issue, what rights are implicated by pretrial detention. But on the claim that the plaintiffs present, which is just of, you know, the initiation of criminal charges, you know, this court's precedence are very clear that there's no constitutional right that's implicated by the filing of criminal charges. And that is the view of, you know, the vast majority of other circuits, and it's been stated by the Supreme Court as well. And, you know, for that reason, all the reasons we explain in our brief, and we'd be happy to submit a supplemental letter on Armstrong explaining, you know, it's. Armstrong is clearly distinguishable because of the lack of custody. Yes. But these are recurring issues. It's great. For your office, for this court, for the plaintiffs bar. Absolutely, but they're not implicated in this case. Okay, thank you very much. Thank you for your time. And we would ask that the judgment be affirmed. Mr. Robertson. Thank you, Your Honor. I'd like to pick up on Judge Hamilton's point, if I could. The fact that Plaintiff Cariole and Plaintiff Johnson were released after bonding out at the bond court does not make this case any less serious. We had one plaintiff, Plaintiff Cariole, whose family mortgaged his house, spent almost $30,000, and who suffers from diagnosed PTSD, has trouble coming into the city, trouble driving, never been arrested before in his life. You know, there are people who are arrested 90 times and Cook County Jail is like a second home to them. For someone like Jeremy Cariole, that two days in custody, who had a disorder that made him, again, a diagnosed disorder by the defendant's own experts, a diagnosed disorder that made him deferential to authority, that that authority, that disorder was used against him to get him to confess, the evidence was hid. And just because he, the family mortgaged his house and he has the resources to bond out, he doesn't have a federal claim, I understand that there are issues regarding the deprivation of liberty. But that is a question for damages. Where is the line going to be drawn? He spent two days in custody that he didn't have to. Once it was realized that these were not the right guys, and the state's attorney wouldn't have decided to prosecute, he would have been let go. Instead, he has to go through the bond court process. He has to wait there, he has to go to jail and be let out however many hours later. Even with that, every trip to court, and I understand you can't really say that going to court is bad, but for Jeremy Cariole, it was hell. Same thing with Plaintiff Johnson. He not only was held during this time, he actually was convinced to plead guilty. Plead guilty and had a felony conviction for 15 months. In a case where the prosecutors, the charging body, let it set aside. When we talked about the malice, I see my time's up, but when we talk about malice and probable cause, it's the inferences. It's the inferences that permeate this case. There's no justifiable explanation for any of this conduct. It was those inferences we were counting on. It was those inferences we deserved below as the non-moving party. It was those inferences we were denied, and it's those inferences that should grant us a new trial. Or a trial, I should say. We ask you, please, to reverse the judgment on all counts and give us the opportunity to present this case to a jury. Sorry, did you want to say something? Thank you, Your Honor. I just wanted to make one point on Judge Hamilton. You indicated that Detective Alderton dug into this, and I think that that is an issue of fact because what we have is the criminal defense attorney, Andy Weisberg, goes. He gets the records. He contacts one state's attorney, two state's attorneys, the supervised state's attorney's office. There's no documentation in the state's attorney's blue back or any records that they were ever called by Detective Alderton. The inference, and I think they're competing inferences, that Detective Alderton, was he digging into this or was it a situation where he knew something was going on and he was trying to fix it when his conduct was discovered? So I think that also is an issue of fact. But thank you very much for your time, Your Honor. Okay, well, thank you, Mr. Robinson.